UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

BAOMING CHEN,

                Plaintiff,

- against -

ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Department of Homeland Security*, UR M. JADDOU, *in her official capacity as Director of U.S. Citizenship & Immigration Services*,

                Defendants.

----------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-1357 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On February 21, 2023, Plaintiff Baoming Chen ("Plaintiff") commenced this action seeking relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, in the form of the Court directing Defendants Alejandro Mayorkas, Secretary of the Department of Homeland Security, and Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services (collectively, "Defendants" or "USCIS") to adjudicate Plaintiff's I-601A petition seeking a waiver of his current unlawful presence in the United States. Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Plaintiff's mandamus claim, and, in the alternative, move to dismiss both his mandamus and APA claims under Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). For the reasons that follow, the Court grants Defendants' motion to dismiss under Rule 12(b)(6).

## BACKGROUND

Plaintiff is a native and citizen of the People's Republic of China ("China") who has been living in the United States since 2002. (Compl., Dkt. 2 ¶¶ 8–9.) He arrived in the United States without inspection through the Mexican border. (*Id.* ¶ 9.) An immigration judge granted Plaintiff withholding of removal on November 1, 2006. (*Id.* ¶ 10.) In addition, Plaintiff's sister—a U.S. citizen—filed an I-130 Petition for Alien Relative for Plaintiff and his wife and two children, which was approved on January 11, 2010. (*See id.* ¶ 11.) Plaintiff's wife and two children still reside in China. (*Id.* ¶ 13.)

Because Plaintiff was ineligible to adjust his status in the United States at the time his I-130 petition was approved, Plaintiff must travel back to China to obtain an immigration visa for himself and his eligible family members. (*See id.* ¶ 16.) However, because Plaintiff is currently "inadmissible" to the United States due to his previous unlawful entry, if he travels back to China to obtain the immigration visa that he has been approved for, he will not be able to re-enter the United States lawfully for up to 10 years unless he is granted an unlawful presence waiver. (*Id.* ¶¶ 14, 16); *see also Calderon v. Sessions*, 330 F. Supp. 3d 944, 957 (S.D.N.Y. 2018) (laying out the process to obtain an unlawful presence waiver); 8 U.S.C. § 1182(a)(9)(B).

To obtain this waiver, Plaintiff was first required to submit a Form I-212 Application for Permission to Reapply for Admission into the United States. *See* 8 C.F.R. § 212.7(e)(4)(iv). Plaintiff did so, and his Form I-212 was approved on December 11, 2020. (Compl., Dkt. 2 ¶ 14.) Then, Plaintiff submitted his application for a provisional unlawful presence waiver, also known as a Form I-601A, to USCIS on April 12, 2021. (*Id.* ¶ 15.) If Plaintiff receives the waiver, he will be able to travel to China for an immigration interview at a U.S. consulate without fear of being barred from re-entry to the United States after his interview. *See* 8 C.F.R. § 212.7(e)(3).

Because USCIS has yet to take action on Plaintiff's I-601A waiver application, he filed the instant lawsuit on February 1, 2023. (*See generally* Compl., Dkt. 2.) He brings two claims: (1) a mandamus claim alleging that Defendants have "unlawfully failed to perform their duty" under 28 U.S.C. § 1361 to adjudicate Plaintiff's I-601A application, (*id.* ¶ 22); and (2) a claim alleging that Defendants have failed to adjudicate Plaintiff's I-601A application in violation of the APA, (*id.* ¶ 24 (citing 5 U.S.C. § 706(1))). Plaintiff alleges that "delay or denial" in the processing of his applications "will cause extreme hardship to his parents[,] who are lawful permanent residents in the U.S.[,] . . . due to [Plaintiff's] unsettled immigration status." (*Id.* ¶ 17.)

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists[,]" *Makarova*, 201 F.3d at 113. When considering a motion to dismiss under Rule 12(b)(1), the Court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

Once a court has determined the threshold issue of subject matter jurisdiction, it may turn to the question of whether the plaintiff has stated a claim. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Similar to the standard applicable to a Rule 12(b)(1) motion, "[i]n addressing the sufficiency of a complaint [under Rule 12(b)(6)], [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013), *superseded by statute as stated in Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006). As such, courts typically "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (citing *Glob. Network Commc'ns, Inc.*, 458 F.3d at 154–55).

## DISCUSSION

### I. Plaintiff's APA Claim

#### A. Subject Matter Jurisdiction

The APA permits federal courts to compel agency action that has been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), unless another "statute[] preclude[s]

4

judicial review," 5 U.S.C. § 701(a)(1).  The parties dispute in this case whether another statute—namely, 8 U.S.C. § 1182—precludes federal courts from exercising jurisdiction over a delay in adjudicating an I-601A waiver as alleged here.  Notably, no court in this Circuit has yet reached this question, and there is a nationwide split among the district courts that have reached this issue.  *See Candido v. Miller*, No. 23-CV-11196, 2024 WL 710660, at *3–4 (D. Mass. Feb. 21, 2024) (describing conflict among courts and collecting cases).[1]  The statute at issue, 8 U.S.C. § 1182(a)(9)(B)(v), provides:

> The Attorney General has sole discretion to [grant a waiver] . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien.  *No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.*

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added).

A majority of courts to address this issue find that this statute precludes federal courts from exercising jurisdiction over USCIS delays in adjudicating I-601A waivers.  *Candido*, 2024 WL 710660, at *3.  While the logic of the majority decisions varies slightly, most look to the definitions of the words "action" and "regarding," since the statute prevents courts from reviewing "action[s]"

---

[1] As of this writing, no court of appeals has yet ruled on this issue, though several relevant appeals are pending.  *See Lovo v. Miller*, No. 22-CV-67, 2023 WL 3550167 (W.D. Va. May 18, 2023), *argued*, No. 23-1571 (4th Cir. Jan. 25, 2024); *Lopez Juarez v. Mayorkas*, No. 23-CV-463, 2024 WL 497150 (M.D. La. Feb. 8, 2024), *appeal docketed*, No. 24-30188 (5th Cir. Mar. 27, 2024); *Singh v. Mayorkas*, No. 23-CV-527, 2024 WL 420124 (M.D. Tenn. Feb. 5, 2024), *appeal docketed*, No. 24-5260 (6th Cir. Mar. 21, 2024); *Soni v. Jaddou*, No. 23-CV-50061, 2023 WL 8004292 (N.D. Ill. Sept. 27, 2023), *argued*, No. 23-3220 (7th Cir. May 29, 2024); *Grajales Cortez v. Miller*, No. 23-CV-3073, 2023 WL 9500788 (D. Neb. Oct. 20, 2023), *argued*, No. 23-3379 (8th Cir. May 9, 2024); *Mercado v. Miller*, No. 22-CV-2182, 2023 WL 4406292 (D. Nev. July 7, 2023), *argued*, No. 23-16007 (9th Cir. Nov. 6, 2023).  Notably, however, several appeals on this issue have been mooted before the relevant circuit court was able to rule on the appeal.  *See, e.g.*, *Beltran v. Miller*, No. 23-CV-3053, 2023 WL 6958622 (D. Neb. Oct. 20, 2023), *appeal dismissed per stipulation*, No. 23-3378 (8th Cir. 2024); *Reyes Silva v. Miller*, No. 23-CV-3038, 2023 WL 7042347 (D. Neb. Oct. 26, 2023), *appeal dismissed per stipulation*, No. 23-3397 (8th Cir. 2024).  As such, this split is purely among the district courts at this moment.

by the Attorney General "regarding" waivers. *See, e.g.*, *Mafundu v. Mayorkas*, No. 23-CV-60611, 2023 WL 5036142, at *4–5 (S.D. Fla. Aug. 8, 2023); *Candido*, 2024 WL 710660, at *3; *Gonzalez v. Moran*, No. 23-CV-3166, 2024 WL 1181885, at *4 (E.D. Wash. Mar. 19, 2024). "Section 1182 does not define . . . [']action.'" *Gonzalez*, 2024 WL 1181885, at *4. Black's Law Dictionary, however, defines the term as "[t]he process of doing something; conduct or behavior." *Action*, Black's Law Dictionary (11th ed. 2019). Similarly, while § 1182 does not define "regarding," "in a legal context[, it] generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel v. Garland*, 596 U.S. 328, 339 (2022) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018)). Given this broad and undefined language in § 1182's subject-matter bar, the majority of district courts that have ruled on this issue conclude that "even though no 'decision' has been made [by USCIS] on the pending I-601A application, the plain meaning of the at-issue statutory language" bars judicial review because the alleged inaction (i.e., delay, or a decision not to act) in making a decision constitutes a form of "action" by the Attorney General "regarding" a waiver under § 1182. *Gonzalez*, 2024 WL 1181885, at *4.[2] Based on this reasoning, these courts have found that the federal judiciary does not have subject matter jurisdiction over undue delay claims such as the one at issue here.

Conversely, courts on the other side of the split hold that § 1182(a)(9)(B)(v)'s language does not prevent federal courts from exercising jurisdiction over claims stemming from a *lack* of

---

[2] The APA's definition of "agency action" explicitly includes an agency's "failure to act." 5 U.S.C. § 551(13). In addition to relying on the dictionary definition of the word "action," some courts on this side of the split also look to the APA definition of "agency action" in reasoning that the word "action" includes "inaction." *See, e.g.*, *Mafundu*, 2023 WL 5036142, at *4; *Echeverri v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-21711, 2023 WL 5350810, at *4 (S.D. Fla. Aug. 21, 2023).

6

action by USCIS.  These courts emphasize the long-settled strong presumption in favor of judicial review of administrative action, noting that only "clear and convincing evidence of congressional intent to preclude judicial review can overcome the presumption" in favor of judicial review. *Saavedra Estrada v. Mayorkas*, No. 23-2110, 2023 WL 8096897, at *5 (E.D. Pa. Nov. 21, 2023) (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020)) (internal quotation marks omitted).  These courts reason that "action" means "doing something" as opposed to "inaction or a failure to act."  *Lara-Esperanza v. Mayorkas*, No. 23-CV-1415, 2023 WL 7003418, at *5 (D. Colo. Oct. 24, 2023) (quoting *Bamba v. Jaddou*, No. 23-CV-357, 2023 WL 5839593, at *2 (E.D. Va. Aug. 18, 2023)).  Consequently, 8 U.S.C. § 1182's jurisdictional bar—which prevents federal courts from "review[ing] a decision or action by the Attorney General regarding [] waiver[s]"— does not apply where there has been only inaction.  *See, e.g.*, *id.*; *Bamba*, 2023 WL 5839593, at *2; *Saavedra Estrada*, 2023 WL 8096897, at *5–6.

This Court finds the logic of the minority decisions more persuasive: by its plain language, § 1182(a)(9)(B)(v) bars judicial review of "action by the Attorney General," not inaction.  After all, "statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)) (internal quotation marks omitted).   The definition of action—"[t]he process of doing something"—"infer[s] some affirmative action, not inaction or a failure to act." *Bamba*, 2023 WL 5839593, at *2.  This interpretation is reinforced by the provision's use of the term "decision" as a companion and alternative to "action."  *See* 8 U.S.C. § 1182(a)(9)(B)(v).  Moreover, when interpreting statutes, "courts seek to 'avoid readings that render statutory language surplusage' or redundant."  *Yoo v. United States*, 43 F.4th 64, 72 (2d Cir. 2022) (quoting *Sacirbey v. Guccione*, 589 F.3d 52, 66 (2d Cir. 2009)).  If the word "action" encompassed failures to act, then the

7

"unreasonable delay" language in § 706 of the APA would be meaningless: if "'fail[ing]' to act every moment between the time an application was submitted and the time it was adjudicated" constituted action, then "no delay would be unreasonable (in fact, no delay would even be a *delay* in the ordinary sense*.*" *Saavedra Estrada*, 2023 WL 8096897, at *5. This buttresses the conclusion that § 1182(a)(9)(B)(v) bars only judicial review of affirmative agency actions or decisions.

In addition, in *Patel*, the Supreme Court admonished statutory interpretations that "read like elaborate efforts to avoid the most natural meaning of the text." *Patel*, 596 U.S. at 340. The most natural meaning of the statute in question here is that it bars judicial review of agency decisions and actions regarding waivers, not agency *in*actions. As such, this Court has jurisdiction over Plaintiff's undue delay claim. *See Bamba*, 2023 WL 5839593, at *2; *Saavedra Estrada*, 2023 WL 8096897, at *5–6; *Lara-Esperanza*, 2023 WL 7003418, at *5; *Novack v. Miller*, No. 23-CV-10635, 2024 WL 1346430, at *4–5 (D. Mass. Mar. 29, 2024); *Segovia v. Garland*, No. 23-CV-1478, 2024 WL 1223481, at *6–10 (N.D. Ga. Mar. 21, 2024); *Guevara v. Miller*, No. 23-CV-397, 2024 WL 83504, at *2–4 (E.D. Va. Jan. 8, 2024); *Granados v. United States*, No. 23-CV-250, 2023 WL 5831515, at *3–5 (D. Colo. Aug. 23, 2023).

    **B.**    **The Merits of Plaintiff's Undue Delay Claim Under the APA**

"[T]he APA requires that 'within a reasonable time, each agency shall proceed to conclude a matter presented to it,' and that courts shall 'compel agency action unlawfully withheld or unreasonably delayed.'" *Zhang v. Wolf*, No. 19-CV-5370, 2020 WL 5878255, at *3 (E.D.N.Y. Sept. 30, 2020) (quoting 5 U.S.C. §§ 555(b), 706(1)). To determine whether Plaintiff has stated a claim under the APA, the Court looks to the factors enunciated in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir. 1984),

which, as interpreted by the Second Circuit, "set[s] forth [a] test for determining if agency action is unreasonably delayed," *Mu v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-02067, 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023) (alterations in original) (quoting *Nat. Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013)).  The so-called "*TRAC*" factors provide the framework that courts in this circuit use to determine whether an agency has unreasonably delayed action on immigration applications.  *See, e.g.*, *De Oliveira v. Barr*, No. 19-CV-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020).³  The *TRAC* factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason . . . ;
>
> (2) [W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply context for this rule of reason . . . ;
>
> (3) [D]elays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; . . .
>
> (4) [T]he court should consider the effect of expediting delayed action on agency activities of a higher or competing priority . . . ;
>
> (5) [T]he court should also take into account the nature and extent of the interests prejudiced by delay . . . ; and
>
> (6) [T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80 (internal quotation marks omitted).  A plaintiff need not "demonstrat[e] that all of these factors weigh in that party's favor" to prevail on an undue delay claim.  *Mu*, 2023 WL 4687077, at *4.  Instead, the factors are "intended to provide 'useful

---

³ "[S]ome courts have declined to apply the *TRAC* analysis on a motion to dismiss." *Kaur v. Mayorkas*, No. 22-CV-4514, 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023).  However, "[t]he weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery." *Id.* (quoting *Sheiner v. Mayorkas*, 21-CV-5272, 2023 WL 2691580, at *5 n.12 (S.D.N.Y. Mar. 29, 2023)); *see also Sheiner*, 2023 WL 2691580, at *5 n.12 (collecting cases).

guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 79). For instance, "a court may 'refuse[] to grant relief, even though all the other factors considered in *TRAC* favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *Zhang*, 2020 WL 5878255, at *6 (quoting *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015)).

1. The First *TRAC* Factor

The first *TRAC* factor is the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d at 855. That factor asks whether "the time agencies take to make decisions [is] governed by a 'rule of reason.'" *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80. Defendants assert that USCIS "generally adjudicates I-601A applications on a first-in-first-out basis," which is a sufficient rule of reason under the *TRAC* analysis. (Defs.' Br. Supp. Mot. to Dismiss ("Defs.' Br."), Dkt. 16 at 15; *see also* USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last visited June 5, 2024) (explaining that USCIS "generally process[es] cases in the order [it] receive[s] them")). Plaintiff responds that "given the unbounded growth in processing times," there is not a governing rule of reason. (Pl.'s 5/10/23 Ltr., Dkt. 8 at 3.) Plaintiff's unsupported assertion on this point is unavailing; numerous courts have held that a "first in, first out" policy is a rule of reason. *See, e.g.*, *Aydemir v. Garland*, No. 22-CV-100, 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022); *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021) (collecting cases). Consequently, this factor weighs in favor of Defendants.

2. The Fourth *TRAC* Factor

In addition to the first factor, the parties also focus on the fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority." *Telecomms.*

*Rsch. & Action Ctr.*, 750 F.2d at 80. "[W]here a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," courts may "refuse[] to grant relief," even if all of the other *TRAC* factors militate in favor of relief. *L.M.*, 150 F. Supp. 3d at 213 (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Indeed, courts in this District have dismissed undue delay claims where the sought-after relief would "simply jump[] one plaintiff to the front of the line and push[] everyone else further back." *Yang v. Houghton*, 21-CV-5485, 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021); *see also, e.g.*, *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224–25 (E.D.N.Y. 2021); *Lu v. Sessions*, 18-CV-1713, 2018 WL 2376304, at *2 (E.D.N.Y. May 25, 2018); *Chen v. Nielsen*, No. 17-CV-7157, 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018).

Here, Defendants argue that in granting Plaintiff the requested relief, the Court would be doing just that: "put[ting Plaintiff] at the front of the adjudication line, ahead of all other applicants, each of whom would be moved back one place in that line." (Defs.' Br., Dkt. 16 at 14.) In response, Plaintiff implies that it might "benefit [USCIS] for Plaintiff to 'jump the line[.]'" (Pl.'s Mem. Opp'n Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. 19 at 19.) Plaintiff does not explain how leap-frogging him to the front of the adjudication queue would be beneficial to USCIS, (*id.*), and the Court cannot fathom why it would be so. As such, this factor also militates in favor of Defendants.

3. The Third and Fifth *TRAC* Factors

Plaintiff argues that the third and fifth *TRAC* factors permit courts to consider "the goals of ensuring family unity and humanitarian results." (Pl.'s Opp'n, Dkt. 19 at 21.) Specifically, the third factor counsels that "delays that might be reasonable in the sphere of economic regulation

11

are less tolerable when human health and welfare are at stake" and the fifth factor permits courts to "take into account the nature and extent of the interests prejudiced by delay." *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80.

Here, human welfare is undoubtedly at stake. That said, "[t]here is no question that USCIS is overstressed and under-resourced in processing all categories of immigration petitions and applications." *Yang*, 2021 WL 5879033, at *1. And of course, "USCIS can only deploy the resources that it has." *Id.* As a result of USCIS's limited resources and drastic increases in the number of immigration-related documents that it must process, there are significant delays. *See, e.g.*, USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last visited June 5, 2024) (indicating that 80% of I-601A waivers are currently being processed within 43 months (a little over three and a half years)). Because of these long waits, the federal courts have been "flooded with cases in which applicants understandably seek to compel faster action." *Yang*, 2021 WL 5879033, at *1.

The Court does not wish to minimize the harm that Plaintiff and Plaintiff's family are experiencing due to family separation and the uncertainty of Plaintiff's immigration status while he waits for USCIS to adjudicate his waiver. Still, many others waiting for their I-601A waivers to be adjudicated are likely in the same position. *See id.* at *2 (noting that asylum applicant's family separation "unfortunately cannot be uncommon").[4] This is the regrettable reality that our immigration system—"overstressed" and "under-resourced" as it is—has wrought for many families. *Id.* at *1. As the court observed in *Novack*, "[i]f the Court were to grant the relief Plaintiff

---

[4] The government argues that Plaintiff's claim is especially non-urgent because Plaintiff has not filed an "expedite request." (Defs.' Br., Dkt. 16 at 10–11.) Plaintiff, however, indicates that he attempted to file an expedite request, but that USCIS's system malfunctioned and, as a result, he was unable to do so. (*See* Pl.'s 5/10/23 Ltr., Dkt. 8 at 2.) Regardless, Plaintiff need not file an expedite request to bring an undue delay suit under the APA.

requests, it would simply move [his] application ahead of others who have waited longer for the same relief." *Novack*, 2024 WL 1346430, at *6.  Plaintiff does not allege that he has waited longer than other applicants, or that USCIS has chosen not to adjudicate his application in particular.  (*See generally* Compl., Dkt. 2.)  At the time of this writing, Plaintiff has been waiting approximately three years for his I-601A waiver to be adjudicated.  (*See id.* ¶ 1.)  While this is certainly unfortunate, many courts have found such a delay—or even longer ones—not to be "unreasonable" in this context.  *See, e.g.*, *Novack*, 2024 WL 1346430, at *6 (dismissing an undue delay claim seeking adjudication of I-601A waiver that had been pending for over three years); *Echeverri*, 2023 WL 5350810, at *1, 7 (similar); *see also Almakalani*, 527 F. Supp. 3d at 225 ("[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable.").  With that in mind, and taking into account the above-discussed factors, this Court grants Defendants' motion to dismiss Plaintiff's undue delay claim under the APA.

**II.     Plaintiff's Mandamus Claim**

Turning to Plaintiff's mandamus claim, that claim is moot given that the Court finds it has jurisdiction over Plaintiff's APA claim.  "The Mandamus Act empowers district courts to exercise 'original jurisdiction to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'"  *De Oliveira*, 2020 WL 1941231, at *2 (quoting 8 U.S.C. § 1361).  To be entitled to relief under § 1361, a plaintiff must establish: "(1) a clear right . . . to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) [that] no other adequate remedy [is] available."  *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989).

Because Plaintiff can—and does—bring an undue delay claim under the APA, "[t]he Court need not even consider whether Plaintiff has satisfied the first two requirements" for mandamus relief. *Mu*, 2023 WL 4687077, at *3. "[T]he availability of a cause of action under [the APA], authorizing a court to 'compel agency action unlawfully withheld or unreasonably delayed,' means that Plaintiff has an adequate alternative remedy," and therefore cannot state a mandamus claim. *Id.* (quoting *Liu v. Wolf*, No. 19-CV-410, 2020 WL 2836426, at *6 (S.D.N.Y. May 30, 2020)).[5] Therefore, Defendants' motion to dismiss Plaintiff's mandamus claim is granted.

## CONCLUSION

While the Court sympathizes with Plaintiff's predicament, it finds that relief is not warranted at this time. For the reasons set forth above, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed without prejudice. If circumstances change, Plaintiff may bring a subsequent action based on those changed circumstances.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: June 5, 2024
      Brooklyn, New York

---

[5] If the Court had found that it lacked jurisdiction on the APA claim, it might have reached a different conclusion with respect to whether a mandamus claim is available. But given that the Court finds that an APA claim—which constitutes an adequate alternative remedy—is available here, Plaintiff cannot state a mandamus claim. *See Mu*, 2023 WL 4687077, at *3.